# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DWIGHT GANN, as Trustee of BR Real Estate Holdings Trust, and SAGE MANAGEMENT LLC | § § § § | |
| | § | CIVIL ACTION NO. 3:24-CV-2168-S |
| v. | § § | |
| DEPOSITORS INSURANCE COMPANY | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Depositors Insurance Company's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 ("Motion") [ECF No. 27]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 28], Plaintiff Dwight Gann, as Trustee of BR Real Estate Holdings Trust, and Sage Management LLC's Response to the Motion ("Response") [ECF No. 39], Defendant's Reply in Support of Defendant's Brief [ECF No. 43], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiffs Dwight Gann, as Trustee of BR Real Estate Holdings Trust, and Sage Management LLC brought this case complaining of an alleged breach of an insurance policy. *See* Pls.' Original Pet. ("Petition") [ECF No. 5-1] ¶¶ 1-2, 22. "BR Real Estate Holdings Trust or Sage Management LLC" contracted with Defendant Depositors Insurance Company to insure a commercial property in Irving, Texas ("Property"). *See, e.g.*, App. to Mot. ("Defendant's Appendix") [ECF Nos. 29-31] 6, 432, 446.[1] For the period from January 29, 2022, to

---

[1] The two relevant insurance policies in this action both provide that the Named Insured under each policy was "BR Real Estate Holdings Trust or Sage Management LLC." *See, e.g.*, Def.'s App. 112, 446.

January 29, 2023, the Property was insured with Defendant under Policy Number ACP CPPD 3067560444 ("2022 Policy"). *Id.* at 432. And for the period from January 29, 2018, to January 29, 2019, the Property was insured with Defendant under a separate policy, Policy Number ACP CPPD 3027560444 ("2018 Policy"). *Id.* at 6.

On September 7, 2022, Gann reported a claim for hail damage to the Property's roof. *Id.* at 2 ¶ 5. Gann made this claim pursuant to the 2022 Policy, and the claim was assigned claim number 725068-GN ("Claim"). *Id.* at 2 ¶¶ 4-5. While Defendant states that Gann reported the claim "for an approximate date of discovery of the loss of August 9, 2022," *id.* at 2 ¶ 5, Gann provides in his Declaration that he "did not know exactly when the damage occurred and it was [Defendant] that provided a date for the damage," App. to Resp. ("Plaintiffs' Appendix") [ECF No. 40] 3 ¶ 4.

Shortly thereafter, on September 16, 2022, a third-party inspection company inspected the Property, and that company, along with Defendant's assigned claims adjuster, found evidence of damage to certain accessories and two out of three sections of the Property's roof. Def.'s App. 3 ¶¶ 7-8, 154-55, 177-81, 192. Defendant's claims adjuster determined that the damage to the Property's roof sections was hail related. *Id.* at 3 ¶ 8. Accordingly, Defendant issued Gann a repair estimate and payment for that estimate on September 29, 2022. *Id.* at 3 ¶ 8.

Then, sometime in February 2023, Gann notified Defendant via letter that he had hired a public adjuster, Blackstone Claim Services, Inc. *Id.* at 202. Then later that same month, Blackstone informed Defendant of its competing estimate and recommended a full replacement of all three sections of the Property's roof for a higher cost estimate than what Defendant had originally paid out. *Id.* at 3 ¶ 9. Gann's February 2023 letter and Blackstone's report both reflected the date of loss as August 9, 2022. *Id.* at 3 ¶ 9, 202-03. After receiving this competing report and

conducting another inspection, Defendant issued a supplemental payment. *Id.* at 3 ¶ 10, 4 ¶ 11, 278-84. Notably, in this second inspection, Defendant's licensed engineer stated that the Property's roof had likely been further damaged by two hail storms "on March 16, 2023, and/or April 21, 2023, as well as historical hailstorms." *Id.* at 3 ¶ 10, 218.

On October 11, 2023, 13 months after Gann made the Claim, Blackstone emailed Defendant a report authored by Plaintiffs' retained expert Gary Treider. *Id.* at 4 ¶ 12. In this report, Treider called for a full replacement of all three sections of the Property's roof due to damage from a June 5, 2018, hailstorm ("June 2018 Storm"). *Id.* at 4 ¶ 12, 617-19. Treider, according to his report, evaluated the roof as early as October 7, 2022. *Id.* at 617. However, Blackstone did not produce this report to Defendant until one year later. *Id.* at 4 ¶ 12.

Plaintiffs ultimately retained counsel, who sent Defendant a letter of representation on February 14, 2024, claiming a loss date of "June 2018." *Id.* at 4 ¶ 14. On February 26, 2024, Defendant sent Plaintiffs an updated coverage decision letter, concluding that it would not make any additional payments pursuant to the Claim and that the June 2018 Storm "occurred outside of the effective policy period (January 29, 2022 to January 29, 2023) associated with the reported date of loss for this claim, August 9, 2022." *Id.* at 297-98. In this letter, Defendant also stated that "[r]ecent hailstorms, including those occurring on March 16, 2023 and/or April 21, 2023, as well as historical hailstorms" had resulted in "widespread" damage to the roof, and that "[it] cannot be ruled out that historical hailstone impacts, including those reported on April 19, 2020, resulted" in a certain "reported leak." *Id.* Plaintiffs' counsel then sent a demand letter to Defendant, after which a third-party engineer inspected the Property. *Id.* at 4-5 ¶¶ 15-16. After this inspection, however, Defendant sent Plaintiffs' counsel a new coverage letter advising that Defendant "stood by its

3

February 26, 2024 coverage decision," in which it denied additional payment for damage from the June 2018 Storm. *Id.* at 5 ¶ 17.

Accordingly, Plaintiffs filed this lawsuit, bringing against Defendant claims for breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Pet. ¶¶ 37-48. Plaintiffs base the Petition on Defendant's failure to pay for damages from the June 2018 Storm. *See, e.g., id.* ¶¶ 8, 10, 37

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

The Court will first address Defendant's argument that Plaintiffs' breach of contract claim fails because the Claim was made pursuant to the 2022 Policy, which does not cover any damages from the June 2018 Storm. Next, the Court will examine Defendant's argument that, to the extent Plaintiffs bring a claim for the breach of the 2018 Policy, there is no evidence of an insurance claim made under the 2018 Policy. Then, the Court will analyze Defendant's alternative argument that, assuming Plaintiffs made a claim under the 2018 Policy, Plaintiffs did not provide prompt notice of the damage from the June 2018 Storm, which prejudiced Defendant.[2] The Court will then turn to Defendant's argument that Plaintiffs' claims for violations of Chapter 541 and breach of the common law duty of good faith and fair dealing both fail because Defendant did not breach any insurance policy at issue and Plaintiffs have not otherwise provided evidence of an independent injury. Finally, the Court will consider Defendant's argument that Plaintiffs'

---

[2] The Court ultimately agrees with these arguments and concludes that Plaintiffs' breach of contract claim fails for these reasons. As such, the Court need not address Defendant's other arguments that Plaintiffs' breach of contract claim fails because Plaintiffs did not segregate damages from the June 2018 Storm from other potential causes of damage, Def.'s Br. 16-19, and that Plaintiffs failed to provide competent evidence to support their claim for damages, *id.* at 19-20. For the same reason, the Court also need not address Defendant's argument that the breach of contract claim asserted by Sage Management LLC fails because that entity has no financial interest in the Property, *id.* at 20-21, and that Gann has produced no evidence to establish himself as the trustee of BR Real Estate Holdings Trust and thus cannot bring a suit on behalf of BR Real Estate Holdings Trust, *id.* at 21.

Chapter 542 claim for failure to promptly pay an insurance claim fails because Defendant is not liable for the breach of any insurance policy in issue, an essential element of a claim brought under that chapter.[3]

### A. Breach of Contract Claim

To establish a breach of contract claim under Texas law,[4] a plaintiff must show (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages to the plaintiff resulting from that breach. *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (citation omitted). Texas law "places the burden of establishing coverage upon the insured." *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009) (citation omitted).

Plaintiffs' breach of contract claim based on the breach of the 2022 Policy cannot survive summary judgment because any damages from the June 2018 Storm fall outside of the 2022 Policy's coverage period. Further, to the extent that Plaintiffs pursue a claim for a breach of the 2018 Policy, such a claim would fail as Plaintiffs neither alleged in their live pleading a breach of the 2018 Policy nor did they make an insurance claim under the 2018 Policy for damage from the June 2018 Storm. Further, even assuming that Plaintiffs made a claim under the 2018 Policy, the years-long delay in notice was not prompt as a matter of law and prejudiced Defendant; thus, any claim for breach of the 2018 Policy would fail for this reason as well.

---

[3] Because the Court concludes that Plaintiffs' Chapter 541 and Chapter 542 claims and their common law duty of good faith and fair dealing fail for these reasons posited by Defendant, it need not address Defendant's alternative arguments as to why these claims fail. Def.'s Br. 23-28, 29-32.

[4] Both parties rely on Texas state law, and the Court agrees that Texas law applies in this diversity case. *See Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) ("A federal court sitting in diversity applies the substantive law of the forum state." (citation omitted)).

*i. Breach of 2022 Policy*

Plaintiffs predicate their breach of contract claim on Defendant's failure to pay for damage from the June 2018 Storm, allegedly in violation of the Claim made under the 2022 Policy. *See, e.g.*, Pet. ¶¶ 8, 10, 37 (basing the Petition on a breach of Policy Number ACP CPPD 3067560444, defined here as the 2022 Policy, and on damage from the June 2018 Storm). However, the 2022 Policy was only effective from January 29, 2022, to January 29, 2023. *See, e.g.*, Def.'s App 432, 444. It is Plaintiffs' burden to establish that any damage from the June 2018 Storm is covered by the 2022 Policy, *see Century Sur. Co.*, 578 F.3d at 265 (citation omitted), but Plaintiffs provide no argument or evidence to suggest that such damages are covered by the 2022 Policy. The Court, therefore, concludes that based on a plain reading of the 2022 Policy, that policy does not cover any damage sustained from the June 2018 Storm. *See* Def.'s App. 444 ("This policy is effective from 01/29/22 to 01/29/23."). Plaintiffs' breach of contract claim based on the 2022 Policy fails for this reason.

*ii. Breach of 2018 Policy*

To the extent Plaintiffs' breach of contract claim is based on breach of the 2018 Policy, this claim fails for the following reasons.

*a. Failure to Plead Breach of 2018 Policy*

First, Plaintiffs never alleged a breach of the 2018 Policy in the Petition. *See, e.g.*, Pet. ¶ 8 (referencing only the 2022 Policy). Accordingly, any claim based on that policy is not properly before the Court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citation omitted)). Thus, any potential claim based on a breach of the 2018 Policy fails for this reason alone.

7

*b. No Claim Made under 2018 Policy*

Second, even if Plaintiffs did allege a breach of the 2018 Policy in the Petition, the record is devoid of evidence of an insurance claim made under the 2018 Policy for damage sustained from the June 2018 Storm. In reviewing the record, the Court finds that the only claim Plaintiffs made was on September 7, 2022, under the 2022 Policy for a reported loss date of August 9, 2022. *See, e.g.*, Def.'s App. 2 ¶¶ 4-5, 115, 150-52. Plaintiffs confirmed this fact, providing in their responses to Defendant's first set of interrogatories that they made no other insurance claims on the Property, other than the Claim, "in the time [they] have owned the Property, or the last ten (10) years, whichever is shorter." *Id.* at 539. As already stated, however, the 2022 Policy covers only damage sustained between January 29, 2022, to January 29, 2023, and does not cover any damage sustained from the June 2018 Storm. *See supra* § III(A)(i).

Plaintiffs do not meaningfully respond to Defendant's argument that they never made a claim under the 2018 Policy. In his Declaration, Gann states that when he made the Claim, he "did not know exactly when the damage [to the Property] occurred," that "it was [Defendant] that provided a date [of August 9, 2022] for the damage," and that he did not learn the damage resulted from the June 2018 Storm until he hired Treider. Pls.' App. 3 ¶¶ 4-5. Plaintiffs argue in their Response that "Defendant knowingly chose to address the claims of [the June 2018 Storm], but failed to open a new claim or report the damage under a different claim." Resp. 4. The Court construes this statement as an argument that Defendant had the burden to open a claim under the 2018 Policy once it was on notice—13 months into inspecting the Claim under the 2022 Policy—that Plaintiffs were also seeking recovery for damage from an occurrence in 2018.

Plaintiffs provide no case law to support this argument, so they have waived it. *See Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L, 2023 WL 121996, at *4

8

(N.D. Tex. Jan. 6, 2023) ("Generally, issues not adequately briefed are waived." (citing, among other sources, *Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018))). Even if Plaintiffs did not waive the argument, however, a review of Texas law suggests that it is incorrect. As already noted, Texas law "places the burden of establishing coverage upon the ***insured***." *Century Sur. Co.*, 578 F.3d at 265 (emphasis added) (citation omitted). In other words, "[a]n insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy." *Emps. Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988) (citation omitted).

Thus, when Defendant denied the Claim to the extent Plaintiffs sought compensation for damage from the June 2018 Storm because that storm occurred outside the 2022 Policy's coverage period, *see* Def.'s App. 298, this denial placed the burden on Plaintiffs to make a new claim for damage under the 2018 Policy, *see Emps. Cas. Co.*, 744 S.W.2d at 944 (citation omitted). *Century Sur. Co.*, 578 F.3d at 265 (citation omitted). Yet upon review of the record, no claim was ever made under the 2018 Policy. Accordingly, Plaintiffs cannot maintain a breach of contract claim for any alleged breach of the 2018 Policy. *See Wells*, 885 F.3d at 889 (noting that an element of a breach of contract claim is performance by the plaintiff).

To the extent Plaintiffs argue that just providing notice of damage from the June 2018 Storm in Treider's report is itself a claim under the 2018 Policy, *see* Resp. 3, or that Defendant's subsequent inspections after Treider's report are an acknowledgement of a claim under the 2018 Policy, *see id.* at 4, Plaintiffs again provide no case law to support these arguments, so they are waived, *see Architectural Granite*, 2023 WL 121996, at *4 (citation omitted). And the Court has not independently located any case law to support these arguments. For all of these reasons, any purported breach of contract claim based on the 2018 Policy fails.

9

*c. No Performance under 2018 Policy*

Finally, even assuming that Plaintiffs made a claim under the 2018 Policy, the Court concludes that Plaintiffs failed to provide Defendant with prompt notice of both the damage to the Property and the full extent of Plaintiffs' claim, and this delay prejudiced Defendant.

*1. Prompt Notice*

"Under Texas law, compliance with a provision in an insurance policy requiring prompt notice 'is a condition precedent, the breach of which voids policy coverage.'" *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 440 (5th Cir. 2016) (quoting *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 611 (Tex. App.—Dallas 2006, no pet.)). Here, the 2018 Policy requires "prompt notice" of any loss or damage to the Property. Def.'s App. 46. However, the term "prompt" is not defined in the 2018 Policy. Plaintiffs argue that "[t]he claim of damage was promptly reported upon the property owner noticing damage," *see* Resp. 4 (citing Pls.' App. 3), implying that Plaintiffs had no duty to make a claim until discovery of the damage. However, under similar circumstances concerning property damage from hailstorms, "Texas courts have held that where 'the policy does not define the term "prompt," [they] construe the term as meaning that notice must be given *within a reasonable time* after the ***occurrence***.'" *Ridglea Est. Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005) (second emphasis added) (quoting *Stonewall Ins. Co. v. Modern Expl., Inc.*, 757 S.W.2d 432, 435 (Tex. App.—Dallas 1988, no writ)). And the Fifth Circuit, applying Texas law, has rejected the argument that "the prompt notice period [for a claim for hail damage] cannot begin to run until the insured actually discovers the damage." *Id.*; *see also Hamilton Props.*, 643 F. App'x at 440 (noting, in a case regarding a claim for hail damage, that notice must be given within a reasonable time "after the occurrence" of the damage (quoting

10

*Ridglea*, 415 F.3d at 479)). Accordingly, under the 2018 Policy, notice was due within a reasonable time after the June 2018 Storm.

"Whether notice is 'prompt' is generally a question of fact." *Sadovsky v. Nationwide Prop. & Cas. Ins. Co.*, No. SA-18-CV-271-XR, 2019 WL 2165805, at *3 (W.D. Tex. May 15, 2019) (citing *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir. 1985)). "[B]ut if the facts are undisputed Texas courts may deem late notice unreasonable[.]" *Id.* (citation omitted). This principle "is especially true where the delay is totally unexplained and without excuse." *Id.* (cleaned up).

Plaintiffs did not make the Claim until September 7, 2022—four years and three months after the June 2018 Storm. *See, e.g.*, Def.'s App. 2 ¶ 5, 120, 150. As an excuse for this delay, Plaintiffs explain only that Gann "reported the claim in 2022 after noticing interior water damage at the building." Pls.' App. 3 ¶ 4. Plaintiffs offer no other excuse as to why the damage to the roof was not previously discoverable for over four years. Further, Plaintiffs did not reveal to Defendant the full extent of their claim (i.e., that the cause of damage was the June 2018 Storm), until they submitted Treider's report to Defendant on October 11, 2023, amounting to a total delay of five years and four months. *See, e.g.*, Def.'s App. 4 ¶ 12. Notably, Treider had inspected the Property as early as October 7, 2022, but Plaintiffs did not produce this report until one year later. *Id.* Again, Plaintiffs provide no explanation for this additional delay.

The Court concludes that a delay of over four years in notice of the damage and a delay of almost five-and-a-half years in notice of the full extent of the claim is unreasonable and thus not prompt as a matter of law. *See Ridglea*, 415 F.3d at 479 (determining that "no rational finder of fact could conclude that [the insured's] notice, which came six years after the alleged date of the hail damage, was given within a reasonable time"); *Hamilton*, 643 F. App'x at 440 (concluding

11

that an unexplained 19-month delay in giving notice of hail damage to a roof was unreasonable as a matter of law (citation omitted)); *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 77 n.2 (5th Cir. 2015) (noting that Texas courts have found delays in notice of 46 days, three months, and six months as unreasonable as a matter of law (citations omitted)).

### *2. Prejudice*

However, under Texas law, "[t]o be absolved from any duty under the [2018 Policy], [Defendant] must further show that it was prejudiced by [Plaintiffs'] unreasonably late notice." *Hamilton*, 643 F. App'x at 440 (citation omitted). "Prejudice can arise when the failure to timely notify results in the insurer's 'inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims.'" *Id.* at 440-41 (quoting *Blanton*, 185 S.W.3d at 615). "Whether an insurer is prejudiced by an insured's untimely notice is generally a question of fact; however, if the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations . . . , the court may decide the issue on summary judgment." *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) (internal citation omitted) *abrogated on other grounds by U.S. Fire Ins. Co. v. Unified Life Ins. Co.*, No. 24-10392, 2025 WL 2355526, *10 (5th Cir. Aug. 14, 2025).

Here, Plaintiffs did not make the Claim until September 7, 2022, four years and three months after the June 2018 Storm. Def.'s App. 2 ¶ 5. By that time, multiple hailstorms had occurred in the area of the Property, *see id.* at 313, 316-17, including a storm on November 10, 2021, that occurred in the area and produced hail "consistent with the hailstone impacts/damage at the [P]roperty," *id.* at 317. The Property also likely experienced the normal course of deterioration, as alluded to by Plaintiffs' own expert. *See, e.g., id.* at 600-01 at 93:17-94:19, 95:3-5.

Further, Plaintiffs did not notify Defendant of the full extent of their claim (i.e., that the Property was damaged not on August 4, 2022, but on June 5, 2018) until October 11, 2023, over one year later. *See id.* at 4 ¶ 12. By that time, multiple other hailstorms had occurred near the Property in the spring of 2023 that also produced hail "consistent with the hailstone impacts/damage at the [P]roperty." *Id.* at 317; *see also id.* at 218, 313. In other words, Defendant "had no opportunity to gather information regarding the *full* scope of [Plaintiffs'] claim, which was revealed for the first time" over a year after Defendant already inspected the Property and made its initial payment under the Claim. *Christian Heritage Sch. v. Cent. Mut. Ins. Co.*, No. 6:24-CV-00045-JDK-JDL, 2025 WL 1341893, at *5 (E.D. Tex. Feb. 14, 2025) (holding that the insurer was prejudiced by a school's delay in claiming damage to multiple buildings that it had initially omitted from its claim and that the delay prevented the insurer from inspecting, since by the time the school added those buildings to its claim, "several weather events occurred" that could have further damaged the buildings). Further, the roof likely continued to experience natural deterioration for the additional 13 months. *See, e.g.*, Def.'s App. 600-01 at 93:17-94:19, 95:3-5.

Because of the unexplained years-long delay, the multiple intervening hailstorms in the area of the Property that could have further damaged the Property, and the continued natural deterioration of the Property's roof, the Court holds that Defendant was prejudiced as a matter of law. *See Gayton v. Great Lakes Reins. (UK) PLC*, No. 7:14-CV-229, 2014 WL 12538138, at *5 (S.D. Tex. Aug. 11, 2024) (finding prejudice as a matter of law where two-year delay denied insurer access to determine the "condition of the roof immediately following the storm, whether the roof exhibited any indicia of hail damage, or whether the alleged damage might have resulted from other events or conditions" (citation omitted)); *Sadovsky*, 2019 WL 2165805, at *4 (finding prejudice where an approximate ten-month delay prevented the insurer from inspecting

13

the property before or shortly after an intervening storm caused damage to the property).[5] Accordingly, any purported breach of contract claim based on the 2018 Policy cannot survive summary judgment for the additional reason that Plaintiffs did not perform under the contract.[6]

### B. Bad Faith Claims

The Court further concludes that Plaintiffs' claims for violations of Chapter 541 of the Texas Insurance Code and breach of the duty of good faith and fair dealing cannot survive summary judgment because Plaintiffs have not established a breach of contract claim and have not otherwise alleged an independent injury. Because Plaintiffs' claims for violations of Chapter 541 and the duty of good faith and fair dealing "can be collectively analyzed under the same standard as a common-law bad faith claim," the Court will analyze them together. *Hamilton*, 643 F. App'x at 442 (citation omitted).

Generally, under Texas law, "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (citation omitted). "This principle applies to alleged violations of [Chapter 541 of the] Texas Insurance Code . . . and the common law duty of good faith and fair dealing." *Tchakarov v.*

---

[5] *See also Alaniz*, 626 F. App'x at 77-79 (finding prejudice where an almost two-year delay in notice caused "continued deterioration," which prejudiced the insurer's "ability to investigate to what extent any damage to the properties might be attributable to the [relevant] hailstorm" (citation omitted)); *Camacho v. Allstate Tex. Lloyds*, No. 7:14-CV-581, 2015 WL 12532736, at *3 (S.D. Tex. Sept. 4, 2015) (finding prejudice where two-year delay caused the insurer's expert to be unable to adequately investigate claims of water damage resulting from a hailstorm (citation omitted)); *Montemayor v. State Farm Lloyds*, No. 1:15-CV-173, 2016 WL 4921553, at *3 (S.D. Tex. Apr. 7, 2016) (finding prejudice where two-year delay prevented the insurer from "detecting and repairing damage to [the] [p]laintiffs' property before the damage worsened" due to "water leakage" (citations omitted)).

[6] While the Court analyzes the doctrines of prompt notice and prejudice under the 2018 Policy, the 2022 Policy includes an identical provision requiring "prompt notice" of any loss or damage. Def.'s App. 463. Accordingly, to the extent the 2022 Policy covers damage from the June 2018 Storm, which this Court has concluded it does not, any breach of contract claim based on the 2022 Policy fails for the same reasons articulated here.

*Allstate Indem. Co.*, No. 3:20-CV-2769-D, 2021 WL 4942193, at *7 (N.D. Tex. Oct. 22, 2021) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018)).

While usually "an insured does not have a bad faith claim in the absence of a breach of contract by the insurer," *Hamilton*, 643 F. App'x at 442 (citation omitted), "if an insurer's statutory [or common law] violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits," *USAA Tex. Lloyds Co.*, 545 S.W.3d at 499 (citation omitted). However, this "independent-injury rule applies . . . only if the damages are truly independent of the insured's right to receive policy benefits." *Id.* at 499-500.

Defendant argues that Plaintiffs have not provided evidence of an injury that is independent from any covered damages under either policy, including "evidence showing [that] damages from the June 2018 [S]torm got worse or more costly to repair during the pendency of the [C]laim." Def.'s Br. 22. In their Response, Plaintiffs neither address this argument nor assert an independent injury, arguing instead that their bad faith claims survive simply because their breach of contract claim should survive and also because Defendant failed to address evidence of the damage presented by Treider. *See* Resp. 7-9. By failing to assert an independent injury, the Court finds that Plaintiffs have waived this argument. *See Cobble v. 20/20 Commc'ns, Inc.*, No. 4:18-CV-00150-Y, 2019 WL 13175520, at *4 (N.D. Tex. Feb. 21, 2019) ("Judges in this district and elsewhere have consistently deemed arguments as conceded where those arguments remain unaddressed in the parties' responsive briefing." (citation omitted)). Further, even if Plaintiffs did allege an independent injury in their Response, as they did in the Petition, *see* Pet. ¶ 52 (alleging further damages to the Property because the damages have not been properly addressed or repaired), Plaintiffs cite to no evidence in the record to support any claim for damages independent from

those covered by the claim. The Court will not "sift through the record" to support Plaintiffs' argument on their behalf. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (citation omitted)). As such, Plaintiffs have failed to demonstrate an independent injury, and thus their claims for violations of Chapter 541 and breach of the common law duty of good faith and fair dealing cannot survive summary judgment.

### *C. Chapter 542 Claim*

Finally, the Court concludes that Plaintiffs' claim for a violation of Chapter 542 of the Texas Insurance Code fails because Defendant is not liable for the breach of any insurance policy, a required element for a Chapter 542 claim. Chapter 542 "provides for additional damages when an insurer wrongfully refuses or delays payment of a claim." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 16 (Tex. 2007)). To prevail on a claim under Chapter 542, an insured must establish "(1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of [Chapter 542] with respect to the claim." *Id.* (quoting *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830-31 (Tex. App.—Fort Worth 2008, no pet.)).

Here, Defendant is neither liable for the Claim under the 2022 Policy for any damage from the June 2018 Storm, *see supra* § III(A)(i), nor liable for any purported claim made under the 2018 Policy for any damage from that storm, *see id.* § III(A)(ii). Accordingly, because Plaintiffs cannot

16

establish the second element of their Chapter 542 claim, this claim cannot survive summary judgment.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Depositor Insurance Company's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 [ECF No. 27]. As a result of this ruling, the Court **TERMINATES AS MOOT** Defendant Depositor Insurance Company's Opposed Motion to Strike the Opinions and Testimony of Plaintiffs' Retained Testifying Expert Gray Treider [ECF No. 24], Plaintiffs' Opposed Motion to Exclude the Expert Testimony of David G. Teasdale [ECF No. 32], and Defendant Depositor Insurance Company's Objections to and Motion to Strike Plaintiffs' Summary Judgment Evidence [ECF No. 41]. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED August 28, 2025.

_____
/KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**

---

[7] Defendant also argues that Plaintiffs' claim under Chapter 542.003 fails because that statute provides no private right of action, see Def.'s Br. 29, however, upon review of the record, Plaintiffs did not bring a claim under that specific subsection, see Pet. ¶¶ 44-47. Thus, the Court need not address this argument.